ERNESTO FERNANDO SCHLÜTER, Plaintiff and Appellant-appellee, *v.* ABOY VIDAL & CO., INC., ET AL., Defendants and Appellees-appellants.

No. 5865. Argued February 26, 1935.—Decided March 31, 1936.

*Hugh R. Francis* for appellant-appellee. *Henry G. Molina* for *Aboy Vidal & Co., Inc., C. J. Torres* for *Finlay, Waymouth & Lee, Inc.,* and *E. Vidal Sánchez,* appellants-appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendants and appellees in this case are Aboy Vidal & Co., Inc., Finlay, Waymouth & Lee, Inc., and Enrique Vidal Sánchez. They sold a certain concrete building, which had been used or was to be used as a warehouse, to Ernesto Fernando Schlüter, the plaintiff in this case. The soil on which the building was constructed belonged to the People of Puerto Rico and was rented to the defendants for a long term of years to expire in 1949. It is agreed that the property was sold for $26,000 including the right of lease, and the price paid was distributed among the defendants. The plaintiff took possession of the premises and attempted to store therein a shipment of fertilizer. He placed the fertilizer on the floor, the water seeped in from below, and a large part of the material was damaged. The plaintiff introduced evidence tending to show that this seepage was more or less customary in heavy rains and that the water, it may be said,

oozed up from the ground. On the other hand, the building is definitely located on the "Marina" below the hills on which the Capitol stands. After suffering this loss the plaintiff brought suit against the defendants asking for a return of a part of the price and also damages for the injury to the fertilizer. If the plaintiff's whole cause of action had prevailed he would have received $13,000 for the overvaluation in price and $12,197 for the damages to the fertilizer. After a trial, we copy the following from the court's opinion:

"From the evidence the court finds as proven that about 1925 the defendants were the joint owners pro indiviso of the one-story concrete building referred to in the complaint and that the plaintiff, as a prospective buyer, had it examined by expert engineers Manuel L. Miró and Francisco Pons; that the building was only appraised at $24,000 and that an estimate of repairs was made, including the floor and roof, amounting to $3,081.90; that the plaintiff afterwards entered into negotiations separately with each of the joint owners for the purchase of the building; . . ."

Then the court reviews the conditions of the purchase and goes on to say:

"It has been shown that the land of El Terraplén has been reclaimed from the sea, that is, filled up; that the ground occupied by the building is below the level of Carretera Nueva and Pershing Street by which it is bound on the north and east respectively; that the ground of Paseo de Covadonga, of San Cristóbal fort and of the Capitol, of San Juan, are likewise on a higher level than that of El Terraplén; that on March 27, 1924, the building took fire and remained vacant from March to November 1924; that at the time of its acquisition by the plaintiff in May 1925, the roof was in defective condition and the rain leaked through, and, besides, that the sunken condition of the floor had existed for some time past owing to the large amount of cement that was stored there, and because the ground, as it seems, was not sufficiently consolidated and stable.

"It is likewise held to be shown that the building sold was not actually occupied by the plaintiff until June 23, 1925, after the defendants had removed from it the materials and articles which they kept there, among which a cement belonging to Enrique Vidal

Sánchez; that the plaintiff stored in the building a large number of sacks of fertilizer and that about the month of August there were heavy rains and the water seeped in from below, flooding the floor, and that about 1854 sacks of fertilizer stored there and worth $10,197 were spoilt; and that subsequently about the month of October 1925, the S. S. 'Glendola' brought to Puerto Rico another shipment of fertilizer for the plaintiff, consisting of 32,000 sacks, which he could not store in the building and that he paid for warehousing $1,913.94 to F. Benítez Rexach and to the Bull Insular Line, Inc."

After reviewing some of the facts the court further said:

"It is generally known that during rainy weather the level of underground waters rises and sinks, depending on the drainage of the land and also on the rise and fall of the tides, and as the ground on which the building stands is close to the sea, as the same was reclaimed by filling up, and below the level of Paseo de Covadonga, Carretera Nueva, and Pershing Street, the water might have seeped in, as testified by engineer Fossas, from the lowest and softest place which was where the floor had sunk and cracked. Likewise, as testified by engineer Earle K. Burton, the seepage might have been caused by the lack of drainage of the alley between the plaintiff's building and the adjoining building belonging to Rolán & Tejedor, owing to the absence of gutters from the roof in the latter's building. The experts have testified that this state of things will disappear as soon as the floor is properly repaired and brought to its original level. Engineer Francisco Pons, whose proficiency and honesty are recognized, guarantees that he can undertake the job for between $4,000 and $4,500."

The court reached the conclusion that while it was true that no layman would ordinarily suspect such a condition of the soil and subsoil, if the floor was not constructed in due form with relation to the physical conditions, this was not a hidden defect. The court had previously recited section 1387 *et seq.* of the Civil Code (Comp. Stat. 1911).

We agree with the appellant that if the recited condition was a hidden defect the plaintiff would have been entitled to something. The appellant does not, however, convince us that the state of the floor allowing the seepage of waters, is a hidden defect. This as a matter of law.

The court also based its decision, in part, on the fact that the plaintiff, Schlüter, before buying the property caused it to be examined by expert engineers. The evidence tended to show that the building was otherwise not in the best of condition and that this fact was known to the plaintiff and his experts.

There is another very important point in the case and that is that one of the defendants had stored cement in the building but took it for granted that it should be placed on planks above the floor. As we understand it, this is a common precaution.

Naturally, if there was no hidden defect or if the plaintiff or his experts had every opportunity to know of the condition of the building, there would be no action for the damage to the fertilizer.

The appellant insists in his brief that the defendants were bound to know of the condition of the building. This may or may not be true. We question whether any actual knowledge was proved. No actual fraud was charged and we think it must be held that the plaintiff either bought with his eyes open or had the opportunity to readily verify the actual condition of the premises.

The defendants also appealed from the judgment because the court failed to impose costs on the plaintiff. Although we are not without doubts the defendants do not convince us that the court committed an abuse of discretion in this regard.

The judgment will be affirmed.

Mr. Justice Travieso took no part in the decision of this case.